is number 23-3030 Hilsenrath against the School District of the Chathams. Mr. Thomson. May it please the court, your honor, Richard Thompson representing the plaintiff appellate in this case. I request three minutes for rebuttal. Granted. Thank you, your honor. We're back here again on a five minute video that was shown to a seventh grade 12 year old, 12 year olds, seventh grade class, a mandated class that they had to take for the purpose of completing their requirements. A part of that class was to examine the Middle East, North Africa, and the culture and geography of that area. I'm sorry to interrupt, but I want to make sure I'm clear as to what's at issue. Now that this is the second time around, it's my understanding that the injunctive and declaratory relief is out of the case. We're just focused on the merits independent of that, correct? Well, we're going to be talking about the application of the Kennedy versus Bramington case on the facts of the case that brought us here in the first place. But you didn't discuss injunctive or declaratory relief. So those are out of the case. Right. We are only asking for, at this point, we are asking for nominal damages, et cetera, because the young man has already graduated from high school. Right. All right. And you mentioned Kennedy and Kennedy changed things, correct? It got rid of the lemon test, correct? Yes, your honor. All right. And how did it change things? How would you describe Kennedy having changed the law? Before, you know, we had the lemon test where it was a pretty, it was a test that was supposed to be applied across the board to all areas of religious freedom and the First Amendment. However, over years, it was in place, I don't know, about 50 or 60 years in place. It was very clear that it wasn't doing what the jurisprudence thought it was going to do. And then over time, and as you look at the cases, even before the Bramington case, the Supreme Court was looking at history and the understanding of our founding fathers as to why the Establishment Clause and why the First Amendment Free Exercise Clause was in place. So I think at this point, we're looking at it from the lens of Kennedy versus Bramington, which looks at history and the understanding of our founding fathers when they developed this. Right. And that history, isn't it correct to say, allows for a lot more religiosity in public spaces than the lemon test allowed for? When you say in public spaces, you're talking about schools, including government, government entities, correct? Yes. In certain ways, it does. But I think also that it does limit the aspect of utilizing religion, especially in the public school area, because we... Clearly in the devotional sense, right? I mean, the Supreme Court has precedents like Engel v. Vitale. Under current Supreme Court case law, you can't, for example, have prayer in public schools, correct? Devotional exercises, correct? Right. Devotional exercises. But this, I'm not sure I understand what was devotional about this. This was a world cultures class. So how, is it your argument, for example, that this school district could not teach about Muhammad, for example? It could teach about Muhammad if it was an objective, if it were objective, or in an objective way. They could teach about Muhammad if they said, Islam believes that Muhammad is the messenger of God. Right. As a belief, but not as a fact. And that is the difference. Well, isn't the video, isn't the cartoon video precisely that? There's a child who's identified as a Muslim, Yusuf, and he is articulating the tenets of his religion. And the tenets of his religion include that Allah is the one true God. Isn't that what the video does? That cartoon does say that. And they do also talk about the Shaheedah, which is the principal faithful, a sentence of all faithful Muslims. Right. So couldn't in this school district, couldn't they in the world cultures unit teach about Jesus of Nazareth? As a curriculum, they can teach about the word about Jesus of Nazareth. And then couldn't they also say that Christians believe that Jesus is part of a triune God, that that's a part of Christian doctrine? Yes, Your Honor. And that could be taught in the public schools. Yes, as long as religion, you cannot really have a well-rounded education unless you know about religion and the various tolerance and understanding in a more diverse society that we live in today, in a pluralistic society. But the Abington case. Well, let's stick to the facts of this case for a minute because because I agree with everything you just said. But that seems to be supporting what the Chathams did here, because the entire point of the unit, which also included Hinduism, Buddhism, other grades in the same school district, talked about Christianity during exploration of the Western Hemisphere. Correct. So so isn't isn't the point here that the school district is trying to expose the children to the wide range of beliefs in the world cultures in some of those beliefs include religious beliefs? Yes. What's the The problem is that in the introduction to Islam video, a five minute video, they made the following statements without any comment about this is what Muslims believe, without any kind of explanation or disclaimer that this is not a belief that the school is endorsing at this time one way or the other. So basically, that's what they said. So what I hear you saying is it's one thing to just provide cold, hard facts. It's another thing to provide them in a context that feels like indoctrination or like proselytizing. I think proselytizing is a very. And so what I think you're saying is I've got a difference. And it seems to me that your entire complaint in action rests not on can they just talk in the abstract, but but how they did it here. So so so you might you might have no grievance with another five minute video that didn't end with visit a mosque and wasn't prepared by an outside organization that that that seems to be trying to convert. And so you might say, give me another video and I'm fine. Your problem seems to be with these two videos and what's in those videos, the use of to create a bond, the use of loss of friendship to create a sadness for not following Islam. All of these things is what I'm hearing you say. That's the problem I have with this video. Put another five minute video on. We aren't here. Am I am I hearing your case right? Yes, your honor, you are. And a very important part is that they also had a video on Buddhism and they had a video on Hinduism. If you look at the videos on Buddhism and Hinduism, they talk about facts. They do not try to proselytize you in the five minute intro to Islam. They end up with this, a part of the video. It says, Oh, may God help us all find the true faith Islam. I'm in. That's that's proselytizing. But so is a little bit of proselytizing. OK, I mean, lemons out. You know, I mean, I mean, I don't really know. Right. Is non-coercive proselytize. We know that at least this is I'll put my cards on the table as I see it. One commonality pre and post lemon is coercion of religion is a bad, bad thing. It's unconstitutional. And so I guess I guess one thought is, though, lemon kind of move proselytizing out basically said, yeah, you can't do that. But lemons gone is is a little bit of proselytizing around the edges. Now, just kind of acceptable government speech, as long as it's not coercive or proselytizing, because it's not one of the six things referenced in Bremerton. There is coercion. There is still a place. There is still a separation of church and state. There's still these long history of that. How can you say there's a separation of church and state when every session of the Congress begins with a prayer? Where do you get that? Again, you go back and Bremerton talks about that. And there's several cases that talk about that. That's a part of our tradition and history that they even say of our tradition in history, that public schools started with a prayer. So the Supreme Court said that was was invalid. We didn't have public schools at the time the colonies were there. Most of the schools were run by Church of England and then Protestant, different Protestant denominations. We didn't have public schools until probably about 1830 or 40. Right. And then we didn't have people, but we didn't have laws that. All right. But back to Judge Phipps. I mean, I just don't understand how separation of church and state is an answer when there's a lot of, you know, you start with George Washington's, you know, statements that he made in his inaugural address, et cetera. But but anyway, there's a there's a purpose. Where do we draw the line in a unit, in a unit on Christianity, in a world culture unit on Christianity? Would it be illegal for the school district to allow a video after the after they explained the basics of of Jesus of Nazareth, the basic views about Christianity? Could the video then say Happy Easter? Is that unconstitutional in your view? Probably not. Probably not. It's a. So if it's not unconstitutional to say Happy Easter, why is it unconstitutional to say if you have any more questions about Islam, go to the local mosque? Well, that starts the process of getting someone converted. But even that statement might tell me how does Happy Easter not start the process of converting? But but if you have questions, visit the local mosque. I'm not sure I understand the distinction between the two. Other than there are two different religions. Well, you know, the courts say there's a play in the joints. You know, there are some movement and all of these cases are very fact intensive. And therefore, you have to look at the free exercise of free exercise clause and you have to look at the establishment clause. Now, they're together sometimes. But if you push them to the extent, sometimes the free exercise clause runs into the establishment clause. And that's where courts have to come in and make those distinctions. So it's not a clear cut rule. Mr. Thompson, you know, we've we've said repeatedly that in the First Amendment context, we have to look at the whole record. And I understand your concerns with that video teaching about Islam. But the lesson was that after the children would watch the video, they would they would do an exercise about what generalizations can you make after viewing this video? Are they valid or faulty generalizations? There was also a worksheet that said, fill in the blanks. There is no God but blank and blank is his messenger. This statement is the centrifugal force to their religion. What are we to do with those with that context that that is in this record? Well, again, you have that kind of situation where even a minimal of incursion into the establishment clause protection is enough. We don't try to make it's not a de minimis kind of incursion. You violated the establishment clause establishment until you look at all the context. So so let's say let's say the video is proselytizing, but then it's presented in the context of an assignment to to list what the the central tenets of the Islamic faith is, their religion, speaking in the third person and to to discuss generalizations in the video. There is nothing wrong as long as you say that Muslims believe this or Jews believe this or Christians believe this. I think there's a place for religion in public schools. There's a reason for why we have religion in public schools. If you don't, if they want to teach it in an objective way, as Abington said, you should teach it not as a fact, not teach it as an objective fact. So when you say Allah, what about what about a conversion prayer? If you can, you teach a conversion prayer, an oral conversion prayer to students in an objective way. And that's still be because because they say, hey, if recited three times publicly in front of witnesses is a conversion prayer. And so can a school district say, you know, we're going to do just totally objective. We just want each of the conversion prayer. Do we have to look and see if we're looking at the whole record, what the utility of teaching a conversion prayer is to understanding the peoples and the geography of northern Africa and the Middle East? Is there any utility maybe for those goals in teaching a conversion prayer? Well, I think, again, I'm not sure what a conversion prayer would mean. But if it's a conversion prayer that we want you to become Christian or we want you to become Islam, I think that's proselytizing. But I'm not sure what exactly the I guess I guess I guess what I'm saying is I understand it. And maybe I need more education on this as a middle schooler. The Shahada, if it's recited three times out loud in front of witnesses, converts a person to Islam. Correct. And so is there value? I mean, in teaching in a public school teaching students, if you want to be this religion, this is all you need to do. Or this is these are the words that are done. Does does that does that kind of take us? It's almost like saying if you want to get baptized, these are the steps that you would need to do. Does that does that go too far? Or are you or if that's done objectively, are you good with that? I think you have to be objective. I'm not sure exactly again how far you want to go. But I think I want to get back to what this introduction to Islam said. I'm just having trouble with when you say objective, because there's a lot of case law from the Supreme Court in this area that talks about the courts staying out of matters of doctrine. Right. It's not it's not the job of the United States courts to to police or referee matters of Christian doctrine or or Islamic doctrine or Jewish doctrine. Would you agree with that? Yes, your honor. In fact, they say that the court should not be concerned about heresy. That's one of the statements they make. Right. If the courts aren't supposed to be entangling themselves with matters of religious doctrine. Isn't it doesn't it make more sense for us to focus on whether there's coercion involved rather than adjudicating the boundaries of any one particular faith? Because when you suggest that the courts are supposed to make sure that the schools are teaching religion in an objective way, that sounds like you're asking us to learn all the details of the doctrine of whatever faith is being taught. Well, going back to is it objective to say Allah is one God? No, I'm that wasn't my question. My question is, if we are engaging in this objective exercise, we run the risk of mediating ourselves into doctrine of the various religions of the world. But if we focus on coercion, we don't have to get into doctrine. Instead, we're just looking at the facts on the ground about what the government is doing to the student. Well, is the government coercing the student? Well, again, coercing has a lot of different ways of coercing. One of the ways of coercing is when a school says there is no equal to Allah. He is all powerful. Muhammad is the last and final messenger. If you're if you're a 12 year old and you're sitting in that class and you have to be in that class and you have to listen to the that and watch that video, you are being coerced. So just by being there. So what you're saying is we have school prayer cases where there's opt out. We have public prayer cases where you can just leave the football field. You can do all these other things when you're in public school and you have to be there. Otherwise face truancy problems and you have to take this course on the Middle East. And then your assignment for the class is to watch this video, which might be a dispute of fact. It seems that the assignment was to watch the PowerPoint with a link to the video. And I'm not sure how that plays out. But but strong form for you. You now have to watch the video and the video has proselytizing in it. Is that enough for I think that is your honor. And again, we're looking at history. And part of the history is our founding fathers realized that they wanted to keep a lot of this religion out of the government's hands because of the strife that it would cause. If I'm a Muslim and I send my child to a public school, do I want to hear the teacher of the public school say, for God so loved the world, he gave his only begotten son that, you know, I want to hear it. But how is that coercive? By just being there and being forced to listen to it is coercion. Mr. Thompson, the children also had to watch a video about Buddhism that referred to the Dalai Lama as the supreme spiritual leader. Were they being coerced into Buddhism? If if they said if it depends on where they say it, the context, but if they say this is what they believe, that's fine. But if this is a school of 12 year olds who are mandated to be there, whose parents pay taxes. Well, they're coerced to be in school. We all agree on that. OK, so but being coerced to sit in school doesn't mean coerced to join a religion or join the tennis team or play in the marching band. Well, there are cases, your honor, where, let's say, Alcoholics Anonymous, people have complained that I have to go there and they have this idea of a supreme being as a part of, you know, their their program by being by sitting there and watching it. The courts can say that's coercion. We reserve some time for rebuttal. Yes, your honor. We'll hear you then. Thank you. Thank you. Let's hear from another Thompson, Ms. Kumar Thompson. Good afternoon, justices. May it please the court. My name is Ruby Kumar Thompson. I'm with the firm of Cleary G. Akobe Alferian Jacobson. We serve as board counsel and litigation counsel to the school district of the District of Chathams. Your honors, establishment clauses to the curriculum. To prevail, the plaintiff would have to show that the school district's curricular decisions have the students learn about, to have the students learn about and to compare and contrast the world's major religions by eighth grade promoted a particular religion here, Islam. There's not much I think that Mr. Thompson and I disagree upon in terms of the establishment clause. It forbids state sponsorship of prayer and most other traditionally religious activities at school, such as Bible reading for religious and moral instruction, offering religious instruction during the school day. But a Bible reading for historical instruction, not religious instruction. For example, what if the curriculum included readings from Genesis in order to present one vision of how the world was created? Your honor, the Bible is an appropriate study in a secular program of education where it's instructing students on the differences in a supreme or divine being. I think that's what crosses the line into religious instruction. Is it instruction or devotional exercises? Are you saying that it would be unconstitutional for the school district to do a unit on Jesus of Nazareth? For the purposes of just moral instruction and for the religious content alone, I would say yes. It would be unconstitutional? It would be unconstitutional to have devotional readings? No, I didn't ask about devotional. I'm saying, could you do a unit that touches at all about Jesus as a historical figure? Absolutely. Okay, and then could you also in that unit instruct the students about Jesus's life? Sure, if it would touch on or explain the history and the people. And the history would include that for the last three years or so of his life, he was moving about preaching. That could be taught as historical fact in the school district. Yeah, of course. Okay, and then finally, could they then say, well, and here's what Christians think about this fellow. They actually believe he is part of a triune God and some of his basic principles include things like loving your neighbor and the Christians believe that he was a virgin birth and rose from the dead on Easter Sunday. Could you teach the students that? That's what Christians believe. Yeah, and I think that this school district did in sixth grade and they studied  All right, so then you could do the same thing with Islam and the same thing with Judaism and Hinduism and Buddhism and Baha'i and every other thing under the sun. Whatever the school board thought made sense for the kids, right? I believe so, as long as they did not prefer one religion over any other. What if one of the units was really just proselytizing? What if one of the units went a little further and maybe the Christian unit said, oh, and by the way, you know, this is how to get baptized. You want to be saved? This is how to get baptized. And it said, Christians believe that, you know, some Christians believe, maybe all Christians believe you aren't saved unless you're baptized. And we just want to tell you that because it affects the Christian worldview and just throwing it out there, won't be saved. And if you want to get baptized though, here's a list how to do it. Is that okay? Because it does influence the Christian worldview, right? That's important to Christians. Most of them get baptized. If you want to understand Christians, you probably have to understand that doctrine of baptism. But if you teach that to seventh graders, are we really going to say, oh, shucks. Yeah, that wasn't proselytizing. That wasn't undue influence on them. That was just cold, objective fact. Can it ever cross the line? Yes, it has to have a rational relationship to an educational goal and a pedagogical goal. And so would the example of baptism have that rational relationship because it's critical to Christian worldview to understand why Christians try to send missionaries all over the world to convert people because they think that you have to be baptized to be saved. And so if you say, hey, you, you don't understand Christianity unless you understand the role of baptism. Could they lay into that pretty heavily and say, you know, by the way, if you haven't been baptized and you want some more information on baptism, here's a list of churches that'd be more than to do that. Is that OK? Yes, your honor. If a student was told that there's a couple of different things in there, if a student was told, look, if you want more information, here you go. The students were required in sixth grade to study, to to research each and every single religion and express what the differences were and in various categories. So but in terms of religious instruction, meaning how to convert specifically by in the mouths of the teacher here, we don't have that situation. That's not what occurred. But it might be in the mouths of the video that the teacher assigned. It was not in this case. You don't you don't think that there's anything that would appeal to seventh graders about those videos to put Islam in a favorable light about those videos as opposed to just rock your bullet point. This is what you need to remember. It teases on friendship. They show each other's heart. The heart beats. One leaves. The other guy frowns when he leaves. He leaves because he wants to go to church as a sense of longing. I want to go with you to church afterwards. That's that's not kind of, you know, tenets of Islam. That's in a video that teases on the emotion of seventh grade, seventh graders possibly. His your opponent's focus seems to be on these specific videos, not the overall curriculum. And no matter what the goals of the overall curriculum are, they can't save certain videos. It would be off limits. Certainly. Surely you can have the best curriculum ever and populate it with one bad video and maybe the problems that bad video. So as I understand his case, it's not a challenge to curriculum. It's a challenge to two videos. Why? Why are those videos? Why are showing those videos presented by outside sources that seem to be designed that have other purposes than education? Why is that OK? Your Honor, there's no formal religious activity depicted in any of the videos, and nor are there any specific words to encourage students to adopt the creator's views as their own, whether or not it is viewed in a positive light or a negative light. In fact, the video start was to explain it was a video for nonbelievers. And like in Kennedy, the students were not required to attend any type of religious instruction. You can't say just because if it's for nonbelievers, doesn't that imply that there's some interest in converting? If it's a video for believers, you might. Why would you make a video for nonbelievers if conversion is not some somewhere in the back of the video? The purpose of the video, of course, was to make generalizations. Purpose is kind of an interesting thing, right? Because purpose is lemon prong one, and it's gone. It's gone now. So I mean, you know, you might be right, but that's gone. Context still matters. Context still matters. But we aren't going to say lemon's gone, purpose is gone, but purpose comes back in through context. That puts us in a bit of a box, right? Well, context matters in terms of coercion. So would this student believe that they were being coerced by just merely being exposed to religious beliefs and ideas? And I think the context informs whether or not a student is coerced into conversion, but where there's no words for conversion, the teacher certainly did not. It involves the conversion prayer, learning the conversion prayer, the shahada, if I understand right, if said three times in front of witnesses converts, and then they say, hey, here's the that's up to the line, but because there wasn't an oral exam asking you to say it three times, it's not coercion. Is that right? So, Your Honor, I don't believe in this case there was actually either a PowerPoint or a video that instructed students that if you say the shahada three times, it was, I think that reference came from a link in the Discover UK Islam video that a student would have to click on to get to. Made available, link made available through the course materials. And that's not coercive in any way, shape, or form to have a student research further through links that were that were the source of the information, meaning the shahada, the exact words, filling out a fill in the blank one time with words that are are are describe the main tenet of a religion is not anything that would be coerced into a student. What if what if the what if it was to act out a Christian baptism just just to make sure that you understood it? Would that would that be coercive? What if the exam was we want to see you just to make sure that you understand where Christians are coming from. We want to see you act out a Christian baptism. Get the water, get get get get the oil just to make sure that you understand objectively what a Christian baptism is. Is that a problem? If that was part of a test, if that was it was if that was the situation, Judge Ripps, I don't believe that there's any educational pedagogical value in acting out a baptism. What what potentially possible educational value would that have to social studies, history, music of of any shape, way, or form? I don't believe religious activity has that. So learning the shahada has value and a baptism doesn't? Isn't that Judge Hartman's problem that we're we're now making value judgments about one one item having value and another item not having value? I don't believe that they're the same thing. So no one's value judgment. No one asked the students to say the shahada three times. You're asking you're asking me about a practice. Can we demonstrate the practice? The teacher didn't demonstrate the shahada. It was in a fill in the blank worksheet. It was in a video just OK, these are the five pillars of Islam that form the religious beliefs of those people. It is not about religious activity. Any coercion in a religious activity or in expressing prayer would be still problematic to this day, even after Kennedy, because it would be directly coercive to those students. Direct coercion, actual coercion is what we need to look to practices in religion, acting out the Bible, acting out a baptism. I don't see any educational value in that or. So one way to just really make it non-coercive is to give the student an opt out. You know, I mean, I mean, let's say this is non-coercive. Just say you can opt out of this class or you can opt out of any unit you want and you can take an extra gym class or get a study hall or something like this. I would agree with that. And we had that in this case. The school where the student could have opted out in any and any instruction that they found offensive or distasteful or that contradicted their own religious beliefs. And is that in the record? I didn't see that in the record. You have that in the record somewhere? It's in the policy. Yes, it was in the summary judgment motion. There's definitely a district policy that was submitted, not maybe not in the appendix. I think that we had some disagreement on what should have been included in the appendix, but it definitely was in the summary judgment motion. We do absolutely have that opt out. Thank you, Ms. Kumar-Thompson. We'll hear from amicus counsel, Mr. Pagliarella. Good afternoon, your honors. Chris Pagliarella on behalf of Jewish Coalition for Religious Liberty, amicus. Judge Phipps, I think the opt out policy is at appendix 18, note 17. I believe it's clause requires the same opt out if possible. I just want to begin where Judge Hardman started the argument on the text of Kennedy. I think it's helpful to look to what Kennedy says it's replacing. It just claims the endorsement test as abstract, unpredictable, impediment to religious inclusion. So you look at the Hallmark test as contrast. It's concrete, accounts for all the court's establishment clause doctrine, including Judge Hardman's you raised separating government from prescribing religious doctrine or prescribing church personnel. That may or may not always be direct coercion, but it is a Hallmark, and it doesn't disturb efforts to promote religious tolerance. We like the Hallmark test. We think it makes concrete what sort of coercion matters for establishment clause claims. As this course mentioned, all students are compelled to attend schools. You might find the lesson against antisemitism boring. You might find it not objective. I don't like how Judaism is being presented so positively, but that doesn't make it coercion in the nature of historical establishment, nor does it bump up against other establishment clause tests. What about the proselytization issue? Could you address that? Should we draw the line on that, or should we draw the line, or should we just set that aside and focus exclusively on coercion? Your Honor, the appropriate Hallmarks here are proselytization. As we said, many forms of proselytization fall into the Hallmarks. So coercing religious practice, punishing dissenting practice. I believe the plaintiff had the concern that he could receive lower grades for something. He genuinely could have received a lower grade for not adhering to religious exercise, and proselytization came in that form. Of course, it would bump up against the Hallmarks. If proselytization means in the colloquial sense, I'm hearing a lot about this religion, not the other one. Well, okay, you're hearing a lot about this religion because antisemitism is a serious issue in America right now, and that's why you heard more about Judaism. That colloquial sense of I feel proselytized because I'm hearing about this much more than other faith would not bump up against the Hallmarks. Judge Phipps, I'm happy to address the baptism hypothetical. So for example, I could imagine very well, and I've maybe even been to one, a drama class or a drama performance where you have a baptism in the play or somebody's reciting a prayer in the play. That's clearly not a devotional context, clearly a National Park curriculum. Of course, and the children of my clients very well may have an opt-out from that, says, I may not be comfortable doing the baptism, even though I know you don't mean devotionally. That's fine, it's for exercise opt-out. In West Virginia v. Barnett, the Jehovah's Witness saw the pledge devotionally, even if no one else did. That's fine, they should have an opt-out. That was under free speech. It's been incorporated for exercise more as of late. Doesn't that opt-out undercut a in the religion in public schools or cases? So, Your Honor, I think that the Establishment Clause certainly prohibits, again, directing students to engage in religious exercise, even if they have the opt-out. The opt-out I'm speaking is doing a lot of work that Lemon used to have to do before cases like Fulton and Tandon. But I certainly agree that it would still be a hallmark of coercion, sorry, coercion in the relevant sense of the Establishment Clause, to direct students to engage religious exercise, even if they nominally had an opt-out. Now, that doesn't mean that Kennedy leaves Lee exactly as it found it. It's Levi Weissman, as referenced in the briefs. At length, obviously, includes the majority opinion in Lee, and dissented Lee, and it relies on dissented Lee to begin to define the hallmark analysis. So I don't know if those cases are left exactly as you found it, but certainly the hallmarks recognize that coercion to engage in formal religious exercise, even with a nominal opt-out under the Constitution or the school district's policy here, would still be a problem. So you touched on this, but just for precision, this hallmark test, I think we trace back to this law review article that Judge Professor McConnell wrote. It's got to be one of the most important law review articles, because we've kind of come to the law now. But it doesn't, it doesn't, proselytization and indoctrination don't fit neatly into any of those six hallmarks. There's not hallmark on proselytization slash indoctrination. It's on public funding. It's on other things like this. So what are we to make of that? Is the answer proselytization a problem only so far as it fits into one of those hallmarks, meaning that proselytization that doesn't fit into one of those hallmarks is somehow okay? So I think the hallmarks make proselytization more concrete than you or I might use it colloquially speaking. So again, compelling church attendance, punishing dissenting worship, the Supreme Court has said compelling church attendance extends to compelling any sort of formal religious exercise. That's in Kennedy. Those are capacious concepts, right? It doesn't have to be coercion as tough as it was into the Protestant establishments. And a formal religious exercise can take many forms today that it didn't under Protestant Christian establishments, right? Telling a student to get two extra points on their test if they attend church on the weekend might be appropriate for parochial school. It's not appropriate under the hallmarks for public school. But let's just say there was an exercise that was just lifted right out of a Sunday school curriculum, right out, right? And then it's taught for a week in public school. Just no test on it, no nothing like that because there's no test in Sunday school typically, right? So it's the exact same curriculum that comes in Sunday school and it's taught for a week at public school. Which one of the hallmarks is that thing? So is it miles away from the situation, Your Honor, but it's just hypothetical? Yeah, yeah, no. I'm just trying to fit proselytization into the hallmarks. So if it comes in the form of compelling church attendance, for example, or if it's analogous to that. It doesn't. Well, it may. I mean, maybe your hypothetical doesn't. It doesn't. It's the exact same. It's the exact same curriculum from Sunday school. No tests, no nothing imported into public school. Which one? Just where's the hallmark problem? Which hallmark is it? If it was anything like my religious school, it would be directing the formal religious exercise, be directing the students to adopt these views and to behave accordingly. And that is something that Kennedy describes as a hallmark. It's sort of extrapolating it by analogy from compelling church attendance. Maybe it's paired with pledging to ascending worship. But clearly, Kennedy says that's sufficiently analogous to the hallmarks, second and third. Forgive me if I find that a little attenuating. It may be attenuating, but it's an attenuation that I think is clearly in the text of Kennedy, that they're in cross-referencing these hallmarks and then explicating how they would apply to that says that compelling a formal religious exercise in any form would be a hallmark of establishment. Can I switch gears to the opt-out? The opt-out's interesting because you can say the opt-out is compelled to keep establishment clause claims from not succeeding. Maybe it's something that we need under free exercise. Maybe it's something under Pierce and Meyer and Yoder in terms of parental rights. You can't, this is in the sphere of parental education and you have to give parents the option to opt their child out. Does it matter here that there was an opt-out? It doesn't seem to have gained much valence in any of the analysis. We're not arguing that an opt-out would defeat a proper statute of clause in the hallmarks. We'd only argue, and we have another context, that an opt-out could be necessary either under a general free exercise right, those comparators, or as you said, a parental free exercise right, which was, I believe, not raised in disclaim to this case, but certainly the right of parents to direct the religious education of their children goes back and even named a Smith as an exception to general rules about neutral and generally applicable law. It's not raised in this case. We certainly think it's very important. It's miles away from a case where, as Judge Friedman brought up, you have a silly memorization exercise swapping a law with Allen, move on with Martin Luther. This is not devotional. I see my time has expired. I'm happy to take questions. Thank you, Mr. Tagliarello. We'll hear the rebuttal from Mr. Thompson. Yes, Your Honor. From the questions from the bench, I understand that you're trying to plumb exactly what is proselytization and how far can the schools go without crossing that line. And that's a very difficult job to try to develop a red line. And that's why I think the courts say that you have to look at all of the circumstances of it's a fact intensive decision that has to be made. But I would go back to the six hallmarks, I think, Your Honor, discussed. I think what Judge Gorsuch said, I believe, was for this may be helpful as far as learning what should be prohibited. So it was just a help. But I don't think he meant that this is the sole test, those six characteristics are the sole test. I think if we go back to what the major concern that our founding fathers had, they did not want to have a government like the King of England and the English laws had regarding religion. And if you look at the schools as government, not as schools, but as government, in this case, it was clear by the five minute video that government was favoring Islam. If you look at the things that they said about all the various things when they were studying Hinduism, then they were favoring Hinduism and they were studying Buddhism, they were favoring Buddhism. Except that if you look at the various videos, I looked at them side by side several times, there's a difference when they were talking about Buddhism and Hinduism versus this more deep emotional proselytization when they said Mohammed, you know. Couldn't an argument be made that those religions are less susceptible to proselytization than religions like Islam and Christianity? Yes, Your Honor, I'm not an expert, so I can't tell you what their purposes are, whether they have missionaries that go out like the Christian missionaries go out or like the Muslim missionaries go out and attempt to proselytize. But the concern is this, if we allow this to happen, this five minute video, if that is the rule, then what we're going to have is other religions coming in like the Weka and saying, we want our five minute video. And then the Muslims say, or the Jews say, we want our five minute video. We're going to turn public school systems into a culture war. The school boards will have to adjudicate all those disputes. And you know that Yes, Your Honor. You want the federal courts to adjudicate those? Well, I think the federal courts will do a better job than school boards because a lot of this is political. And there is a whole idea of all these battles that went on for two centuries since our nation was founded were political. When one denomination got the power, they would do Even the religions that escaped England because they were being prosecuted, as soon as they got the power in the colony, then they kicked out everybody else. Or they discriminated against everybody else. We're going to have Catholics discriminating against Protestants, Protestants discriminating against Catholics, and then we're going to have both of them discriminating against Jews. Why doesn't an opt out solve all of that? Why doesn't an opt out solve all of that? Well, there's a lot of things that you say, hey, you know what, this is just not, we don't want our kids going to this. You can teach all you want about ex-religion, but my kids are opting out. Doesn't the opt out solve the coercion? There are several cases, and I don't have them at the tip of my tongue, but there are several cases where there were opt outs, and the court said that doesn't make a difference. So that just because there's an opt out, you know, in the Lee versus Weissman, those students could have walked out. They didn't have to, they weren't forced to be there. There was that social pressure, I guess, to be there, but they could have walked out. Giving them an opt out does not solve it. That was an endorsement. Thank you, Mr. Thompson. Okay, thank you. I appreciate your time. We appreciate your argument. We appreciate the arguments from Ms. Kumar Thompson and Mr. Pagliarell. The court will take the matter under advisement.